May it please the Court, J.D. Henderson for the Appellant Jones. This is a case about the plain language of laws that are designed to protect employees and that employers must comply with before they're relieved of the obligation to pay overtime for work over eight hours in a day. There's agreement here on all the facts, there's just disagreement on what the plain language of the law means. Here, there's great latitude provided to employers to define what's called a work unit for an alternative work week schedule program. They can define it by location or not, they can define it by region, by occupation, there's a wide variety of ways that the employer can choose to define it. But once work unit is defined, the employer must conduct an election and the employees that vote in it must be members of that work unit. The work unit here was defined by the employer to be the pharmacy manager at the El Cajon store. When the election was held, this defendant admits that the that Mr. Jones was not. Statutes say that the person has to be in the unit at the time of the election as opposed to at the time of the work. It says in the wage order 4 in section 3 under election procedures that the only employees that may cast a vote are affected employees in the work unit. That applies to the election specifically, it doesn't apply to working after that. We're looking at wage order 4 and section 511 and they're both consistent. I believe wage order 4 parrots the language of section 511. Employees must be affected employees in the work unit and that's what it says. But when he was in the work unit, he was an affected employee and he was, in other words, it's depending whether you're looking forward or back, right? At the time the thing went into effect, he was affected, he was in the work unit. No, he was not in the work unit, Your Honor. In is present tense. In, not going to be in. All of their briefs say that he was going to be assigned, that they had offered him the position, that he would be working in that position, but there's no dispute here that at the time of the election, he was not the pharmacy manager at the El Cajon store. Therefore, he was offered the position and he accepted the position. He was offered the position and accepted the position the same day that they told him that he would be voting in an AWS election and that they might give him the position on a temporary basis. And 14 days later, he was asked to vote on whether or not to accept this schedule without overtime pay. And again, they hadn't confirmed that he had been transferred because he hadn't been transferred. And then he was transferred and began working without overtime pay. And this was after he had sued them and said that they weren't complying with alternative workweek schedule procedures. And imagine it like this. If he had been offered the position, had been transferred, was now working at the El Cajon store, they had then conducted the election and he had voted no. And then they transferred him back. We then have an adverse employment action. But that didn't happen. That didn't happen because they didn't transfer him until he had agreed. And that is in direct violation of the wage order. Well, they had made a commitment to transfer and he had accepted it. Imagine if... Certainly, he would have had a claim had they done this, a retaliation for asserting his rights. He would have then... And that happened. He would have then had the burden of showing that their reason for withdrawing the offer was protection. They're not allowed to do what you say they could have done. They couldn't have done it. It would have been illegal to do it. They're not allowed to conduct an election with employees that aren't in the work unit. He was not there. I'd like you to read, tell me where it says that in Rule Order 4, in Wage Order 4. Wage Order 4... In order to be valid, right? Something that's valid means in order to be operative, right? To be allowed to do it. Correct. The proposed alternative work schedule must be adopted in a secret ballot election before the performance of work. This was done before the performance of work. Right. By at least two-thirds of the affected employees in the work unit. The people who are going to be affected, who are at the time of the performance of work going to be in the work unit. And he was in the work unit at the time of the performance of work. Going to be in the work unit isn't the same as in the work unit. I was going to be in courtroom 3 earlier this morning, but I wasn't in it until I got here. But the focus here is on the validity. When it becomes operative, the focus of the sentence is, this is not valid unless the affected employees at the time the work is performed have done this. And he had. He had never been the pharmacy manager at the Al Cajon store until after the election was conducted. I'm having a hard time with your plain words argument. I don't see where the timing is that you're arguing for is in this statute. Well, it also specifies that the election must be held at the work site of the affected employee. There's no doubt that work site here was in a completely different location than Al Cajon. But at the same time, when the employer defined the position by location, that meant that work unit was in Al Cajon. So if you define the work unit by location, then the work site has to be at that same location at the same time. And he can't be two places at once. And the reason that these requirements are here is to avoid just the kind of possible problem for employees that we face here. It's a single employee work unit. They're going to know how he voted. They offered him a position that he really wants because it's two hours closer to his house. And they say this is a 12-hour store. All the people that work here work 12-hour shifts. It's your decision whether or not you take it. But we're going to make you vote in this election on whether or not you agree to work without overtime pay before we transfer you. That's what happened here. And these wage orders are to be strictly construed in favor of the employee, not in favor of the employer. Strictly construed means just what it says. The plain language says in the work unit. The work unit was defined as in Al Cajon. He wasn't in Al Cajon. Therefore, he wasn't in the work unit. And there's a very different set of facts, a very different kind of lawsuit, at least from a plaintiff's attorney's point of view, between somebody that was offered a job and then actually the offer was withdrawn before they started working versus somebody that was offered a job and fired. One's wrongful termination. One doesn't exist at all. I'm trying to understand the coercion theory that you have here a little bit better because I guess that maybe I'm a little naive, but I looked at this as the employer offering him, your client rather, the option to accept this alternative work schedule. It's like, it's your choice. You've accepted the transfer. We're going to send you to this other store as you want. Your choice. Take it this way or take it that way. And luckily, you're the only person who has to vote. There's no other employees in the work unit. So I guess I'm just at a loss to see where's the coercion in that. He was afraid that if he didn't, it wouldn't occur. But it had already been approved and he had accepted it. Yeah, and there's nothing that prevents an employer that says, hey, we're going to transfer you from coming up and saying, hey, we're not going to transfer you. He does it in retaliation for the assertion of his rights. Sure. That might be a retaliation claim, but that's a very different prospect when an employee is in the position of dealing with the corporation and the corporation says, we're going to transfer you, but first, tell us if you're going to work without overtime or not. That's what an AWS election is. Tell us if you're going to work without overtime or not before we transfer you. Hang on, sir. Then you say as the employee, you say, no, actually, I'd like the just the regular eight hour day. Right. I have a right to make that election. And then you say that the employer says, OK, well, fine. You like it like that, then you're going to stay right here. We're not. We're sending the transfer. It turned out we have a more senior pharmacist and we're going to put him there. There's a very difference. So there's no other explanation for why the transfer that had already been approved and had already been accepted, why that's being rescinded other than your vote in this. Oh, there's all kinds of pretext. That's what plaintiffs, attorneys and employment law deal with every day. We didn't fire him because he alleged sexual harassment. We fired him because of X, Y or Z. The reason that these requirements are to be strictly construed in favor of protecting the employee is to make sure that there's absolutely no risk that employees are forced into working overtime when they don't accept that they're not following the AWS rules properly and was suing them. And then they say, if you want to move closer to your house, tell us if you're going to work overtime without pay or not. That's what happens here in an AWS election is they asked before they transferred him if he would agree to work without overtime pay. And there was no guarantee the transfer would go through. In fact, the supplemental excerpts of record show that it was a temporary transfer. And it's difficult to put an employee in that position where he has to allege that, oh, the reason they didn't transfer me was a pretext. They actually did it because I voted no versus just making the employer comply with the plain language of the statute, which says in the work unit. The issue here is not was he going to be transferred. The issue here is not does it seem like this isn't that big a deal, although it certainly actually is. The issue here is was he in the work unit when he voted. And that is a time requirement because at the time you cast the ballot, you have to be in the work unit, not going to be in the work unit. And this employer admits that he was not, but says it's not that big a deal. This same employer, by the way, repealed the AWS schedule. And they say, that's okay. We don't have to because you alleged it was unlawful. But they haven't paid him any overtime for the AWS hours he did work. And they still insist that the AWS schedule is valid, despite the fact he was not in the work unit when he voted. And at the same time, they say, but we can end it without complying with the very clear law on how you end in AWS. Are you saying that in order to be an affected employee in the work unit, he must have actually commenced working in that work unit? I believe it depends on how the employer defines the work unit. There's a wide latitude in how to do it. I can't think of a situation where that wouldn't be the case. But it is possible, I suppose. The employer could have defined it by pharmacists in the work unit. Pharmacists, all pharmacists that work for Albertsons for an AWS. And you're an employee, and we've already told you that you're working for us. And you're waiting for your pharmaceutical license. You probably could vote in that election. And then when you become a pharmacist, you're working the AWS because you were an affected employee. You were in the work unit, and you were just waiting on your certification. I don't know if that would be okay or not, but I know that's not the case here. What's the difference? The difference here is that he wasn't in El Cajon. He hadn't been working in El Cajon. He just knew it was closer to his house. And they had him vote while he was not a pharmacy manager at the El Cajon store. And the very sector of coercion is enough to suggest that the Industrial Welfare Commission had good reasons for imposing this requirement on an employer. The statute says that the vote is supposed to be before the performance of work, right? That's correct, Your Honor. All right. So why, I guess this is the same question you've just been dealing with, but if it's supposed to be before the performance of work, what difference does it make whether it's before the performance of work and he's in the same location or before the performance of work and he's in a different location? The same problem can still arise. No, no, no. That means it's before the work shift begins. It doesn't mean before you begin working for that employer or you're in that work unit. For the employer. And it's to make sure that the employer doesn't force everybody into a room to vote. They can't say, all right, your shift begins at 7, at 7 be in conference room A and vote. It has to be before the performance of work. Means before you start working under this alternative work work schedule? Before the performance of work means that, no, it says before the performance of work, not before the performance of AWS work. The election can take place during working hours, but it has to be available before then too. It doesn't say before working hours. It says before the performance of work. And I understand that to mean before you work under the alternative work week schedule. Well, okay. That's great. Imagine why that is, before the performance of work. Okay. You don't put somebody on an AWS schedule and then have them vote on it. You also don't. Exactly. So here, before they had him work this schedule, they let him vote on it. They let him vote on it, but he wasn't in the work unit. And I described a bunch of different ways why that's important. If you're going to define it by physical location. Do you want to reserve any time? I do, Your Honor. Then you should do it now. Thank you. I'd like to reserve the remainder of my time. Good morning. May it please the Court. My name is Rex Heineke, and I'm here with my colleague, Gary McLaughlin, on behalf of Apo Lee. They're really the three Apo Lees, all Albertson's entities. I guess Albertson's finds this the most confusing case. It thought it was doing the right thing. It was trying to do the right thing. The man wanted to switch to Al Cajon. They said you can switch. Well, in fact, the trial began with a different complaint, right? Right. Which was exactly what? It was never clear to us what it was. It was very vague. It had something to do with alternative work schedules. It didn't have anything to do with what's at stake here. This is a case that changed over time. So we couldn't figure out when the first complaint was filed, before this issue came up, what Mr. Jones was unhappy about or what the issue was. And then it morphed into this case where he became unhappy about Al Cajon, which we didn't understand because we let him vote. We already gave him the job before he voted, and we told him it's up to you. Do you want AWS? Fine. Vote for it. You don't want AWS? Fine. Vote against it. So what's your response to his coercion argument, that that's the reason why it's so important to be very strict about abiding by the word in? And I think the answer to that is what was being suggested by the court, which is if we had him vote and then were unhappy with him because of his vote and then revoked the offer to transfer him there, I think he would have a claim against us. But in fact, if he were in the unit and he'd voted, and he was the only person and he voted in a certain way, you could still have the same problem. You could transfer him out because you're mad at him. I'm sorry, because what? If he were already Al Cajon and the day he arrives, you say, let's have this vote. And he votes, no, I don't want the AWS, you could transfer him out. Right. And we were in the same place. Exactly. So I don't see anything here about coercion, especially on the facts here. The facts are that we told him he could go there before he voted. So it was clear. There wasn't any, well, let's see what your vote is, then we'll tell you what's going to happen about your transfer. We said you can transfer. And we also said to him, his supervisor said to him, vote for the AWS if you want it. Vote against it if you want to vote against it. Any significance to the fact that the offer to transfer was temporary? I don't think so. I frankly don't recall the offer being temporary, but that's possible. I don't think it's ever been raised in any of the briefs that the offer was temporary here. I thought that's what the offer said. The other thing I would point to is if we really wanted to coerce this gentleman, why did we then do what he asked us when he changed his mind and said, hmm, I don't like the AWS? We said, okay, you don't like the AWS, we're not going to make you do something you don't want to do. You don't want to do the AWS, fine. You don't have to do the AWS. We didn't try and coerce him to do anything or make him do anything. We just offered this as an option. He took it. When he became unhappy with it, we said, fine, you don't have to do it anymore. Is he still employed? Yes. At which location? I think at El Cajon. But he's not doing the AWS schedule anymore. Right. But we thought we were trying to do the right thing at all times. He wants to transfer, fine. You want AWS, vote. You get whatever you want. He gets there. After four months, he said, meh, I don't like this AWS thing. We said, okay, you don't like it, we're not going to make you do something you don't want to do. I'm not sure what else we were really supposed to do here. It seems to me we were as fair and reasonable as we possibly could be here. So, as I say, we've always been perplexed by what the real complaint is, except that it seems really to be an attempt to get a windfall, to generate a piece of litigation and get some money when there's really no case here. I'd be happy to answer any of the court's other questions, but I don't want to take up the court's time. Do we have anybody? Thank you. Thank you very much. May it please the court, in the two minutes that I have left, I understand that the court doesn't think there was a specter of coercion here when someone's facing the possibility. Suppose he had arrived at El Cajon or El Cajon the first morning that he was supposed to report, and they said, here, have the vote, and he had the vote, and he voted no. Why isn't the, whatever, the coercion is exactly the same? They could say, all right, forget it, you don't have the job, go back where you came from. Because that's a demonstrable adverse employment action, and it's very different from revoking a transfer. To offer a job and have a job and accept, it's just what you're saying. It's not the same thing. It's not the same thing in proving it in a court of law. It's not the same thing at all. Once you make a transfer and you begin to work there, and then you transfer them out, that's a demonstrable adverse employment action, according to California law. And you don't think it would be an adverse employment action to offer somebody a job, have them accept it, and then rescind it. That's not an adverse employment action. What are the damages? There are no damages. We had a transfer, and then we rescinded it, and that's not the same at all. He wants to be transferred. Once a transfer has occurred, that is a very different specter. And the reason that these laws are interpreted strictly is to avoid that kind of feeling for an employee. I understand that everybody's focusing on what the plaintiff did here, but why didn't they just wait until he was actually in the work unit to conduct the election? What we're alleging is- That's because otherwise, what are they supposed to do? He arrives there, it's 8 o'clock in the morning. Now they have the vote at 8 o'clock in the morning the day he walks in, or what? No, you wait until they're transferred. You then have a meeting. You then wait 14 days before the election. He's reported. He's reported. He's reporting on an eight-hour schedule. You then are required to have a meeting to make sure that you go over this with the employee. You are then required to have a 14-day waiting period. You're then required to have the election, and then you can't make the employee begin to work that schedule for another 30 days. And that's why those protections are in there, is to avoid this kind of situation. They also haven't explained how if this is a valid AWS, and again, California law is very clear that these are strictly construed, and in the work unit means just what it says. Excuse me. Your time is up, so thank you very much. Thank you, Your Honor. All right. The case of Jones versus AB Acquisition is submitted, and we go to the last case of the day, Casino Palmer versus NRB.
judges: Berzon, Watford, Linn